IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| KATHARINA MARSHALL, | ) | CASE NO. 3:16 CV 2620 |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | MAGISTRATE JUDGE WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Katharina T. Marshall for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 23. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 8.

[4] ECF # 9.

[5] ECF # 5.

procedural[6] orders the parties have briefed their positions,[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## Facts

### A. Background facts and decision of the Administrative Law Judge ("ALJ")

Marshall, who was 43 years old at the time of the administrative hearing,[11] graduated high school, is single, and lives with her three children, two of them being minors.[12] Her past relevant employment history includes employment as a photographer/photo studio manager, fast food worker, and assembly worker.[13]

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Marshall had severe impairments consisting of cervical degenerative disc disease, bilateral carpel tunnel syndrome, fibromyalgia, depressive disorder, anxiety disorder, obsessive-compulsive disorder, history of alcohol abuse, and

---

[6] ECF # 10.

[7] ECF # 14 (Marshall's brief), ECF #21 (Commissioner's brief).

[8] ECF # 21-1 (Commissioner's charts); ECF # 14-1 (Marshall's charts).

[9] ECF # 13.

[10] ECF # 26.

[11] ECF # 13 at 1.

[12] ECF # 9, Transcript ("Tr.") at 187.

[13] *Id.* at 172.

histrionic personality disorder.[14] The ALJ made the following finding regarding Marshall's residual functional capacity:

> The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant cannot crawl or climb ladders, ropes, or scaffolds; but she can frequently stoop, kneel, crouch, and climb ramps and stairs. The claimant is capable of frequent handling, fingering, and reaching in all directions. She must not be exposed to workplace hazards such as unprotected machinery or heights and cannot perform commercial driving. The claimant is limited to work with no strict production quotas or fast paced work, such as an assembly line. In addition, the claimant is limited to simple, routine, and repetitive tasks that involve only simple work-related decisions. Finally, the claimant can have only occasional and superficial interaction with the general public and co-workers.[15]

Given that residual functional capacity, the ALJ found Marshall incapable of performing her past relevant work as photographer/portrait studio manager, fast food worker, and an assembly worker.[16]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Marshall could perform.[17] The ALJ, therefore, found Marshall not under a disability.[18]

---

[14] *Id*. at 159.

[15] *Id.* at 163.

[16] *Id*. at 172.

[17] *Id*. at 173.

[18] *Id*. at 174.

**B.     Issues on judicial review**

Marshall asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Marshall presents the following issues for judicial review:

- Whether the ALJ's residual functional capacity finding is supported by substantial evidence.

- Whether remand is warranted for the consideration of new and material evidence.[19]

As more detailed fully below, I will find that the decision of the Commissioner should be reversed, and the matter remanded under Sentence Six of 42 U.S.C. 405(g) for the consideration of new and material evidence.

# Analysis

**A.     Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence.

---

[19] ECF # 14 at 1.

> Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**B.     Application of standards**

This matter initially centers on whether there was substantial evidence to support the RFC finding that Marshall could perform a reduced range of sedentary work. In particular, Marshall challenges the RFC's limitation as to gross and fine manipulation, which was determined to be "frequent." Marshall then raises a second issue involving a remand for new and material evidence.

---

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

By way of background, Marshall notes that the record shows that she has been treated for weakness in her hands, multiple tender points consistent with fibromyalgia, evidence of radicular pain along the C6. C7 and C8 nerve distributions and tremors of the hands bilaterally.[23] She further notes that diagnostic studies have shown moderate to severe carpal tunnel syndrome, advanced cervical degenerative changes with canal stenosis, and disc collapse and stenosis at C4-5, C5-6 and C6-7.[24] She also points out that she underwent bilateral carpal tunnel releases and a cervical fusion after the state agency reviewers rendered their opinions.[25]

In addition, Marshall asserts that her testimony at the hearing is that she is constantly drowsy and fatigued, and that she has ongoing shaking/tremors in her hands that make it difficult to grasp objects, a problem that is exacerbated by numbness in her hands and wrists despite her carpal tunnel surgery.[26]

Taken together, she contends, as to the first question here, that the "outdated non-examining source opinions," together with the evidence cited above, meant that the ALJ should have brought in a medical expert to provide an acceptable evidentiary foundation for the RFC.

---

[23] ECF # 14 at 20 (citing record).

[24] *Id.* (citing record).

[25] *Id.* (citing record).

[26] *Id.* (citing record).

As to the second issue of new evidence, Marshall contends that evidence produced subsequent to the hearing before the ALJ but prior to the decision shows more significant limitations from hand tremors greater those recognized in the RFC. Specifically, Marshall points to visits in June and July 2015 with Dr. Adil Kataby, M.D., during which Marshall was found to be experiencing cervical radicular pain bilaterally.[27] Further, she notes that in July 2015 Dr. Halina Pritula, M.D., found that Marshall's tremors in her hands were now worse due to anxiety, and that the tremors interfered with her ability to do daily activities.[28] Dr. Pritula diagnosed Marshall with "essential tremor" and prescribed Topomax for headache preventive management, as well as treating her tremors.[29]

In addition, Marshall also raises new evidence from December 2015 - or after the date of the decision - where Patricia Young, a physical therapist, notes that Marshall was experiencing "constant" tremors and weakness, and displayed "very weak" postural muscles on both wrists during an examination.[30]

It is noted initially that although the parties have expended significant resources debating the question of whether the ALJ found sufficient evidentiary support in the record he reviewed for the RFC, I find that I do not need to address that question. In short, even if

---

[27] Tr. at 1163, 1167.

[28] *Id*. at 1268-75.

[29] *Id*.

[30] *Id*. at 103-103.

the ALJ could be found to have properly formulated the RFC based on the evidence before him, the new and material evidence cited by Marshall requires that the matter be remanded.

In that regard, the ALJ made a point of stating that Marshall had only been observed twice with tremors, and further stated in the opinion that on both occasions the tremors had been noted as "slight."[31] Moreover, in addition to specifically questioning the frequency of the tremors and their severity, the ALJ then essentially questioned whether any tremors were caused by Marshall being non-compliant with her pain medications.[32]

Whatever support these particular notations by the ALJ gave to his conclusion regarding the RFC's limitation on gross and fine manipulation, these findings are directly impacted by the new evidence from Dr. Kataby and Dr. Pritula. Dr. Kataby, for instance, had been treating Marshall for pain and loss of feeling in her arms and hands since 2012 with multiple therapies including steroid injections, lumbar radiofrequency procedures and cervical medial branch blocks; all treatments not easily susceptible to abuse or non-compliance by a patient and all with only limited success.[33] Moreover, Dr. Pritula, who had been treating Marshall since 2013, was explicit in noting hand tremors during the examination, and in concluding that the tremors were "essential."

---

[31] Tr. at 170.

[32] *Id*.

[33] See, id. at 574, 575, 576, 802, 803-07, 843-45, 846-48, 849-51, 902-06, 907-11,, 912-15, 1010-13, 1014-16, 1017-19.

Thus, this evidence is both new and material, in that there is more than a reasonable probability that no ALJ would conclude that Marshall's tremors were infrequent or slight - and so not a basis for any more significant functional limitation - if there is a recent treatment note from a physician directly contradicting both points. The recent nature of such a finding by a physician is highlighted here by the fact - clearly apparent in the record - that apart from this new evidence, the only medical opinions here are over two years old.

It is noted again that sending the matter back for consideration of this new evidence does not involve any decision by me as to whether the ALJ properly formulated an RFC here without additional opinion evidence. As the foregoing discussion makes clear, even if it was proper of him to fashion the RFC on the record as it then existed, several fundamental points supporting that RFC - and in particular the findings made in the opinion concerning the frequency and severity of the tremors - are now highly suspect in light of the new evidence.

## Conclusion

Accordingly, and for the reasons stated, the decision of the Commissioner denying benefits to Katharina Marshall is hereby reversed. The matter is remanded for further proceedings consistent with this opinion under Sentence Six of 42 U.S.C. § 405(g).

Dated: March 28, 2018          s/ William H. Baughman, Jr.
         United States Magistrate Judge